FILED

2012 MAY 23 P 3:25

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT

E-filing

1  FRANCIS M. GREGOREK (144785)
   BETSY C. MANIFOLD (182450)
2  RACHELE R. RICKERT (190634)
   PATRICK H. MORAN (270881)
3  WOLF HALDENSTEIN ADLER
     FREEMAN & HERZ LLP
4  750 B Street, Suite 2770
   San Diego, CA 92101
5  Telephone: 619/239-4599
   Facsimile: 619/234-4599
6
   GREGORY M. NESPOLE
7  ROBERT B. WEINTRAUB          ADAM J. LEVITT
   WOLF HALDENSTEIN ADLER       WOLF HALDENSTEIN ADLER
8    FREEMAN & HERZ LLP           FREEMAN & HERZ LLC
   270 Madison Avenue           55 West Monroe Street, Suite 1111
9  New York, New York 10016     Chicago, Illinois 60603
   Telephone: 212/545-4600      Telephone: 312/984-0000
10 Facsimile: 212/545-4653      Facsimile: 312/984-0001

MMC

11 Attorneys for Plaintiffs

CV 12 2662

12 [Additional Counsel Appear On Signature Page]

13

14          UNITED STATES DISTRICT COURT

15          NORTHERN DISTRICT OF CALIFORNIA

16 MICHAEL SPATZ and SANJAY ISRANI, on behalf   ) Case No.
   of themselves and all others similarly situated,  )
17                                              )
              Plaintiffs,                        ) **CLASS ACTION COMPLAINT**
18                                              )
      v.                                        ) **JURY TRIAL DEMANDED**
19                                              )
   FACEBOOK, INC., MARK ZUCKERBERG,             )
20 DAVID A. EBERSMAN, DAVID M. SPILLANE,        )
   MARC L. ANDREESSEN, ERSKINE B. BOWLES,       )
21 JAMES W. BREYER, DONALD E. GRAHAM,           )
   REED HASTINGS, PETER A. THIEL, MORGAN        )
22 STANLEY & CO. LLC, J.P. MORGAN               )
   SECURITIES LLC, GOLDMAN, SACHS & CO.,        )
23 MERRILL LYNCH, PIERCE, FENNER & SMITH        )
   INCORPORATED, BARCLAYS CAPITAL INC.,         )
24 ALLEN & COMPANY LLC, CITIGROUP               )
   GLOBAL MARKETS INC., CREDIT SUISSE           )
25 SECURITIES (USA) LLC, DEUTSCHE BANK          )
   SECURITIES INC., RBC CAPITAL MARKETS,        )
26 LLC, and WELLS FARGO SECURITIES, LLC,        )
                                                )
27            Defendants.                        )
                                                )
28 ----------------------------------------------)

CLASS ACTION COMPLAINT

1     Plaintiffs below, individually and on behalf of the class described below, allege this class
2  action complaint based upon their own personal knowledge, as to their own acts and the acts and
3  statements of Defendants in which each Plaintiff participated directly (the communications with,
4  representations made, and documentation and information provided to each of them by Defendants
5  in the ordinary course of business), and upon the investigation of their counsel (and counsel's
6  information and belief only to the extent expressly stated herein). Counsel's investigation
7  conducted on Plaintiffs' behalf, included, among other things: (i) an analysis of publicly-available
8  news articles and reports; (ii) a review and analysis of public filings, including but not limited to
9  Securities and Exchange Commission ("SEC") filings by Defendants; (iii) press releases issued by
10 Defendants; (iv) research of facts and the applicable law with respect to the claims asserted herein
11 including the use of sophisticated investigatory tools such as *Bloomberg* subscription services,
12 *Lexis Nexis* and other subscription services, and (v) other matters of public record.

13                              **NATURE OF THE ACTION**

14     1.     This is a federal securities class action brought by Plaintiffs alleging claims under
15 sections 11, 12, and 15 of the Securities Act of 1933, 15 U.S.C. § 77 *et seq.* ("Securities Act")
16 against Defendants, seeking to recover damages caused to the Class by Defendants' violations of
17 the Securities Act.

18     2.     On May 18, 2012, Facebook, Inc. ("Facebook" or the "Company") floated its initial
19 public offering ("IPO") of 421,233,615 shares of its common stock at a price to the public of $38
20 per share on the NASDAQ Global Select Market under the symbol "FB." Under the terms of the
21 offering, Facebook sold 180,000,000 shares of Class A common stock and selling stockholders
22 sold 241,233,615 shares of Class A common stock.

23     3.     In addition, Facebook and the selling stockholders granted the underwriters a
24 30-day option to purchase up to 63,185,042 additional shares of Class A common stock to cover
25 over-allotments, if any. As discussed below, Morgan Stanley, J.P. Morgan, Goldman, Sachs,
26 BofA Merrill Lynch, Barclays, Allen & Co. LLC, Citigroup, Credit Suisse and Deutsche Bank
27 served as book runners for the offering and RBC Capital Markets and Wells Fargo Securities are
28 serving as active co-managers.

CLASS ACTION COMPLAINT

1    4.    The offering was slotted to raise over $16 billion and was predicted to be the most
2  important market event in recent history generating tremendous enthusiasm. What transpired,
3  however, has proven to be an additional blemish on Wall Street's already damaged reputation and
4  provided more evidence that investment banks and their issuer clients are apt to favor hedge funds
5  and other large clients over retail customers. Indeed, it now appears that contrary to early reports
6  Facebook's poor debut was not the function of an efficient market settling on an appropriate
7  valuation for the stock.

8    5.    Instead, Facebook's steady decline from its offering price was a function of large,
9  favored investors having been tipped off during the "road show" that analysts employed by the
10 lead underwriters for the deal slashed internal revenue forecasts for the Company. This form of
11 selective dissemination of material information that was in turn omitted from the effective and
12 operative Registration Statement and Prospectus that was delivered to investors is a violation of
13 the federal securities law.

14   6.    This action arises from the issuance, underwriting and sale by Defendants of
15 Facebook shares through a registration statement, various amendments thereto and prospectus
16 (collectively, the "Offering Documents") that contained material misstatements and material
17 omissions concerning the investment risks of buying Facebook shares.

18   7.    Defendants, individually and collectively, had a duty to Plaintiffs and the Class to
19 provide information regarding Facebook that did not contain material misstatements or omit to
20 disclose all information about Facebook that would be material to Plaintiffs and the Class in their
21 decisions to purchase shares of Facebook.

22                              **JURISDICTION AND VENUE**

23   8.    This Court has jurisdiction over the subject matter of this action pursuant to
24 section 22 of the Securities Act of 1933 and 28 U.S.C. § 1331 and § 1337.

25   9.    Plaintiffs bring this action pursuant to 15 U.S.C. §§ 77(k), 77(l) and 77(o) of the
26 Securities Act.

27   10.    Venue is proper in this District because Defendants conduct business in this
28 District and many of the wrongful acts alleged herein took place or originated in this District.

CLASS ACTION COMPLAINT

- 2 -

1    11.    Most of the Defendants are either headquartered in this District or maintain
2  significant business presences here.

3    12.    In connection with the acts alleged in this Complaint, Defendants, directly or
4  indirectly, used the means and instrumentalities of interstate commerce, including, but not limited
5  to, the mails, interstate telephone communications and the facilities of the national securities
6  markets.

7    13.    Shares of Facebook are a security within the meaning of federal law.

8    14.    Shares of Facebook were sold to class members who reside within this judicial
9  district.

10                                         **PARTIES**

11    15.    Plaintiff Michael Spatz purchased shares of Facebook pursuant to the Offering
12  Documents on the IPO and was damaged thereby as evidenced by his annexed Plaintiff's
13  Certification. *See* Verification of Plaintiff Michael Spatz (attached hereto as Exhibit A).

14    16.    Plaintiff Sanjay Israni purchased shares of Facebook pursuant to the Offering
15  Documents on the IPO and was damaged thereby as evidenced by his annexed Plaintiff's
16  Certification. *See* Verification of Plaintiff Sanjay Israni (attached hereto as Exhibit B).

17    17.    Defendant Facebook, Inc. ("Facebook" or the "Company") is located in Menlo
18  Park, California, within this judicial district, and is incorporated under the laws of the State of
19  Delaware. Facebook operates a social networking website that allows people to communicate and
20  share information with friends and family. It also develops technologies that facilitate the sharing
21  of information.

22  **Individual Defendants**

23    18.    Defendant **Mark Zuckerberg** ("Zuckerberg") is the Chairman and Chief Executive
24  Officer of the Company and signed the Final Registration Statement dated May 21, 2012.
25  Facebook, Inc., Registration Statement (Form S-8) (May 21, 2012) ("Final Registration
26  Statement").

27    19.    Defendant **David A. Ebersman** ("Ebersman") is the Chief Financial Officer of the
28  Company and signed the Final Registration Statement dated May 21, 2012.

CLASS ACTION COMPLAINT

- 3 -

1      20.     Defendant **David M. Spillane** ("Spillane") is the Chief Accounting Officer of the

2 Company and signed the Final Registration Statement dated May 21, 2012.

3      21.     Defendant **Marc L. Andreessen** ("Andreessen") is a director of the Company and

4 signed the Final Registration Statement dated May 21, 2012.

5      22.     Defendant **Erskine B. Bowles** ("Bowles") is a director of the Company and signed

6 the Final Registration Statement dated May 21, 2012.

7      23.     Defendant **James W. Breyer** ("Breyer") is a director of the Company and signed

8 the Final Registration Statement dated May 21, 2012.

9      24.     Defendant **Donald E. Graham** ("Graham") is a director of the Company and

10 signed the Final Registration Statement dated May 21, 2012.

11      25.     Defendant **Reed Hastings** ("Hastings") is a director of the Company and signed the

12 Final Registration Statement dated May 21, 2012.

13      26.     Defendant **Peter A. Thiel** ("Thiel") is a director of the Company and signed the

14 Final Registration Statement dated May 21, 2012.

15      27.     These nine individual Defendants are collectively referred to as the "Individual

16 Defendants."

17 **Underwriter Defendants**

18      28.     The following underwriter Defendants were the underwriters "on the cover" of the

19 Facebook prospectus.

20      29.     Defendant **Morgan Stanley & Co. LLC** ("Morgan Stanley"), the lead underwriter,

21 is located at 1585 Broadway, New York, NY 10036.

22      30.     Defendant **J.P. Morgan Securities LLC** ("J.P. Morgan") is located at 270 Park

23 Ave., New York, NY 10017.

24      31.     Defendant **Goldman, Sachs & Co.** ("Goldman Sachs") is located at 200 West

25 Street, 29th Floor, New York, NY 10282.

26      32.     Defendant **Merrill Lynch, Pierce, Fenner & Smith Incorporated** ("BofA Merrill

27 Lynch") is located at Bank of America Corporate Center, 100 N. Tryon Street, Charlotte, North

28 Carolina 28255.

CLASS ACTION COMPLAINT

1    33.    Defendant **Barclays Capital Inc.** ("Barclays Capital") is located at 200 Park Ave.,
2  New York, NY 10166.

3    34.    Defendant **Allen & Company LLC** ("Allen & Co.") is located at 711 Fifth Ave.,
4  New York, NY 10022.

5    35.    Defendant **Citigroup Global Markets Inc.** ("Citigroup") is located at 388
6  Greenwich Street, New York, NY 10013.

7    36.    Defendant **Credit Suisse Securities (USA) LLC** ("Credit Suisse") is located at 11
8  Madison Ave., New York, NY 10010.

9    37.    Defendant **Deutsche Bank Securities Inc.** ("Deutsche Bank") is located at 31
10  West 52 St., New York, NY 10019.

11    38.    Defendant **RBC Capital Markets, LLC** ("RBC Capital Markets") is located at 3
12  World Financial Center, 200 Vesey St., New York, NY 10281.

13    39.    Defendant **Wells Fargo Securities, LLC** ("Wells Fargo") is located at 420
14  Montgomery Street, San Francisco, CA 94104.

15    40.    These eleven Defendant underwriters are collectively referred to as the
16  "Underwriter Defendants."

17    41.    All Defendants are collectively referred to as "Defendants."

18                    **CLASS ACTION ALLEGATIONS**

19    42.    Plaintiffs bring this action as a class action pursuant to Rule 23(a) and (b)(3) of the
20  Federal Rules of Civil Procedure on behalf of all investors that purchased Facebook common
21  stock on the IPO pursuant or traceable to the Offering Documents (the "Class").

22    43.    Members of the Class are so numerous that joinder of all members is impracticable.
23  While the exact number of Class members is unknown to Plaintiffs at this time and can only be
24  ascertained through appropriate discovery, Plaintiffs believe that there are thousands of members
25  of the Class located throughout the United States.

26    44.    According to the Offering Documents, over 450 million shares of common stock
27  were sold to the public pursuant to the IPO.

28    45.    Facebook shares were sold to Class members during the Class Period pursuant to

CLASS ACTION COMPLAINT

1   the Offering Documents.

2       46.   All members of the Class may readily be identified from records maintained by

3   Facebook and/or its transfer agent and may be notified of the pendency of this action by mail,

4   using forms of notice similar to those customarily used in securities class actions.

5       47.   Plaintiffs' claims are typical of the claims of the other members of the Class.

6   Plaintiffs and the other members of the Class, by virtue of their purchases of shares of Facebook

7   on or pursuant to the IPO, have sustained damages as a result of Defendants' unlawful activities as

8   alleged herein. Plaintiffs have retained counsel competent and experienced in class and securities

9   litigation and intend to prosecute this action vigorously. The interests of the Class will be fairly

10   and adequately protected by Plaintiffs. Plaintiffs have no interests which are contrary to or in

11   conflict with those of the Class which Plaintiffs seek to represent.

12       48.   A class action is superior to all other available methods for the fair and efficient

13   adjudication of this controversy. Plaintiffs know of no difficulty to be encountered in the

14   management of this action that would preclude its maintenance as a class action.

15       49.   Common questions of law and fact exist as to all members of the Class and

16   predominate over any questions solely affecting individual members of the Class. Among the

17   questions of law and fact common to the Class are:

18       a.   Whether the Securities Act was violated by Defendants' acts;

19       b.   Whether each Defendant participated in the course of conduct complained of

20   herein; and

21       c.   Whether members of the Class have sustained damages as a result of Defendants'

22   conduct, and the proper measure of such damages including but not limited to recessionary

23   damages.

24
### THE PROSPECTUS CONTAINED MATERIAL MISSTATEMENTS AND OMITTED MATERIAL INFORMATION

25       50.   Facebook, through its underwriters, sold over 421 million shares of common stock

26   on May 18, 2012. The IPO was priced at $38 per share and resulted in the Company raising $16

27   billion for itself and the selling stockholders, including Defendant Zuckerberg.

28

51. The IPO was marketed through the issuance of the Offering Documents and the presentation of numerous "road shows" to various investment banks and potential investors that senior Facebook executives attended along with underwriters.

52. The Prospectus contained material misstatements and statements made materially inaccurate through the omission of material facts. These include the following statements contained in the Prospectus:

> We believe this increased usage of Facebook on mobile devices has contributed to the recent trend of our daily active users (DAUs) increasing more rapidly than the increase in the number of ads delivered.

> \*       \*       \*

> As an example, we believe that the recent trend of our DAUs increasing more rapidly than the increase in the number of ads delivered has been due in part to certain pages having fewer ads per page as a result of these kinds of product decisions.

> \*       \*       \*

> Based upon our experience in the second quarter of 2012 to date, the trend we saw in the first quarter of DAUs increasing more rapidly than the increase in number of ads delivered has continued. We believe this trend is driven in part by increased usage of Facebook on mobile devices where we have only recently begun showing an immaterial number of sponsored stories in News Feed, and in part due to certain pages having fewer ads per page as a result of product decisions. For additional information on factors that may affect these matters, see "Risk Factors – Growth in use of Facebook through our mobile products, where our ability to monetize is unproven, as a substitute for use on personal computers may negatively affect our revenue and financial results" and "Risk Factors – Our culture emphasizes rapid innovation and prioritizes user engagement over short-term financial results."

Facebook, Inc., Prospectus (Form 424B4), at 14, 17, 57 (May 18, 2012) ("Prospectus").

53. Each of these statements in the Prospectus contained material misstatements, omitted to state a material fact required to be stated therein, or failed to disclose certain material facts necessary to make the statements therein not misleading, because each failed to materially disclose that Facebook's revenue and revenue growth rate would be substantially lower than that originally disclosed and forecast.

54. It is absolutely clear that the statements in the Prospectus were materially inaccurate and materially incomplete disclosures concerning the fact that Facebook's revenue and revenue growth rate would be lower, and that these facts were not being completely and accurately disclosed in the Prospectus. This is so based upon the following facts.

1      55.    The actionable statements from the Prospectus quoted above were originally added
2    by prospectus dated May 9, 2012.  Facebook, Inc., Amendment No. 6 to Form S-1 Registration
3    Statement (Form S-2/A) (May 9, 2012) ("Amendment No. 6").

4      56.    Thereafter, during the time period between May 9, 2012 and May 17, 2012, which
5    included the Company's roadshow, the Underwriter Defendants materially lowered their estimates
6    of Facebook's future revenue and revenue growth rate.

7      57.    Prior to the May 18, 2012 effective date of the Company's IPO, however, the
8    Underwriter Defendants only disclosed their materially lowered estimates of Facebook's revenue
9    and revenue growth rate privately *to select major clients* who were potential investors in the IPO
10   and did not disclose their lowered estimates to the investing public at large.

11     58.    The fact that the Underwriter Defendants lowered their revenue and revenue
12   growth rate estimates demonstrates that the statements added to the prospectus by prospectus
13   Amendment No. 6, which were subsequently contained in the effective Prospectus of May 18,
14   2012, were material.  The fact that the revised revenue and revenue growth rate estimates were
15   only privately disseminated by the Underwriter Defendants demonstrates that these additional
16   Amendment No. 6 disclosures were materially deficient – they contained material misstatements,
17   omitted to state material facts required to be stated therein, or failed to disclose certain material
18   facts necessary to make the statements therein not misleading.  This is so because otherwise there
19   would have been no reason for the Underwriter Defendants to limit disclosure of their revised and
20   lowered estimates to private disclosure to select potential investors in the IPO, without full and
21   complete disclosure in the Prospectus.

22     59.    Defendant Morgan Stanley was the lead investment bank for the Facebook IPO.

23     60.    Morgan Stanley's consumer Internet analyst, Scott Devitt, materially "cut his
24   revenue estimate for the current second quarter significantly, and also cut his full-year 2012
25   revenue forecast."  But, prior to the Company's IPO, Morgan Stanley only disclosed its materially
26   lowered estimates privately to select major clients who were potential investors in the IPO and did
27   not disclose its lowered estimates to the general investing public, according to a May 22, 2012
28   Reuters article entitled, "*Morgan Stanley Shocked Investors By Cutting Facebook Estimates Just*

1    *Before IPO.*" Barr, Alistar, *Morgan Stanley Shocked Investors By Cutting Facebook Estimates*
2    *Just Before IPO,* Reuters (May 22, 2012) ("*Reuters* Article")

3         61.    Scott Sweet, senior managing partner at the research firm IPO Boutique, said he
4    was aware of the reduced estimates, according to the *Reuters* article. He went on to say, however,
5    that he learned of the lowered estimates from "[m]y biggest hedge fund client [who] told me they
6    [Morgan Stanley] lowered their numbers right around mid-roadshow," according to *Reuters.*

7         62.    Upon information and belief, another of the three top-line investment banks on the
8    cover of the prospectus, J.P. Morgan, prior to the Company's IPO also materially lowered its
9    estimates of the Company's revenue and revenue growth rate. Similarly, prior to the IPO, J.P.
10    Morgan only disclosed its materially lowered estimates privately to select major clients who were
11    potential investors in the IPO and did not disclose its lowered estimates to the general public at
12    large. *See Reuters* Article.

13         63.    Upon information and belief, another of the three top-line investment banks on the
14    cover of the prospectus, Goldman, Sachs & Co., prior to the Company's IPO also materially
15    lowered its estimates of the Company's revenue and revenue growth rate. Similarly, prior to the
16    IPO, Goldman, Sachs & Co. only disclosed its materially lowered estimates privately to select
17    major clients who were potential investors in the IPO and did not disclose its lowered estimates to
18    the public at large. *See Reuters* Article.

19         64.    At the same time that the Underwriter Defendants were privately *lowering* their
20    estimates of the Company's revenues and revenue growth rate, the Company and the Underwriter
21    Defendants were publicly *upwardly revising* the projected IPO price to the effective price of $38
22    per share.

23         65.    This type of selective dissemination of material information has damaged the Class.
24         66.    First, in the days leading up to the IPO, Facebook and the Underwriter Defendants
25    elected to issue millions of additional shares in an exceeding 60 million shares. Many large hedge
26    funds were unwilling to accept additional allocations because they were aware that analysts at the
27    lead underwriters had privately lowered their revenue and revenue growth rate estimates. Those
28    additional shares, instead, found their way to the accounts of thousands of small, retail customers

CLASS ACTION COMPLAINT

1  who had requested small allocations but given prior experience in other "hot" IPOs like Google,

2  were surprised to receive their requested allocations or allocations larger than those requested.

3  These investors did not know however that they were buying shares in an IPO that the lead

4  underwriters' analysts thought was overvalued.

5      67.   Second, many hedge funds which were told that analysts had slashed projections

6  were able to quickly sell their allocated position and short the stock, thereby causing downward

7  pressure on the IPO.

8      68.   Third, the fact that the Underwriter Defendants' research analysts only privately

9  disclosed their lowered revenue and revenue growth rate estimates for Facebook demonstrates that

10  the separation of those investment banks research and investment function did not exist and had

11  been breached for this IPO because the private only dissemination of the lowered estimates helped

12  the Underwriter Defendants' investment bankers sell the public offering.

13     69.   The Facebook IPO went public on May 18, 2012 at a price of $38 per share. It

14  reached its high of $45 per share just a few minutes later.

15     70.   On May 22, 2012, the price of Facebook shares further declined to close at $31.00.

16     71.   Had Plaintiffs and the members of the Class known of the facts not disclosed in the

17  Offering Documents, they would not have purchased their Facebook shares or would have

18  purchased them only at substantially reduced prices.

19     72.   The Company raised billions of dollars which it would not have been able to raise

20  if the Offering Documents had not contained material misstatements and material omissions.

21     73.   Similarly, the Underwriter Defendants made over $150 million in underwriting fees

22  from sales of Facebook shares in the IPO, fees that they would not have made if the Offering

23  Documents had not contained material misstatements and material omissions.

24                          **NO SAFE HARBOR**

25     74.   The statutory safe harbor provided for forward-looking statements under certain

26  circumstances does not apply to any of the allegedly false statements pled in this complaint.

27  Virtually all of the specific statements pled herein were not forward-looking or were not identified

28  as "forward-looking statements" when made. To the extent there were any forward-looking

CLASS ACTION COMPLAINT

1    statements upon which Plaintiffs base their claims, there were no meaningful cautionary

2    statements identifying important factors that could cause actual results to differ materially from

3    those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory

4    safe harbor does apply to any forward-looking statements pled herein, Defendants are liable for

5    those false forward-looking statements because at the time each of those forward-looking

6    statements was made, the particular speaker knew that the particular forward-looking statement

7    was false, and/or the forward-looking statement was authorized and/or approved by an executive

8    officer of Defendants who knew that those statements were false when made.

9        75.    The safe harbor does not apply to statements made, as here, in connection with an

10   initial public offering.

11                              **FIRST CLAIM FOR RELIEF**
     **(Against All Defendants For Violations Of Section 11 Of The Securities Act)**

12       76.    Plaintiffs repeat and reallege each and every allegation above as if fully set forth

13   herein.

14       77.    Plaintiffs do not allege that the material omissions and material misstatements set

15   forth herein were made intentionally, knowingly or recklessly by Defendants.

16       78.    Plaintiffs brought this action within one year after the discovery of the materially

17   incorrect statements and omissions, and within three years after the shares were offered to the

18   public through the Offering Documents.

19       79.    This claim is brought by Plaintiffs against all Defendants.

20       80.    The Company was the issuer of the Offering Documents and sold the shares

21   pursuant to the Offering Documents.

22       81.    Each of the Individual Defendants signed the Prospectus.

23       82.    Each of the Underwriter Defendants served as a co-managing underwriter of the

24   Offering, and is identified as such by, among other things, their listing "on the cover" of the

25   Prospectus. Each of the Underwriter Defendants is also liable for the material misstatements and

26   material omissions in the Offering Documents and is therefore also liable to Plaintiffs and the

27   members of the Class under § 11.

28

1       83.     Each of the Individual Defendants participated in the preparation of, caused to be

2   issued and/or participated in the issuance of the Offering Documents, and signed the Registration

3   Statement, each of which was inaccurate and contained material misstatements; omitted to state a

4   material fact required to be stated therein, or failed to disclose certain material facts necessary to

5   make the statements therein not misleading, as set forth herein.

6       84.     Each of the Underwriter Defendants participated in the preparation of, caused to be

7   issued and/or participated in the issuance of the Offering Documents, each of which was

8   inaccurate and contained material misstatements; omitted to state a material fact required to be

9   stated therein, or failed to disclose certain material facts necessary to make the statements therein

10  not misleading, as set forth herein.

11      85.     The Individual Defendants did not make a reasonable investigation, failed to

12  exercise reasonable due diligence, and/or had no reasonable grounds to believe, that the Offering

13  Documents issued by the Company were free of material misstatements and material omissions at

14  the time those documents were filed, and they are therefore also liable to Plaintiffs and the

15  members of the Class under § 11.

16      86.     Plaintiffs allege that all statutory affirmative defenses available to only Underwriter

17  Defendants under sections 11 and 12 are affirmative defenses which those Defendants must plead

18  and prove and which Plaintiffs need not allege. Nevertheless, Plaintiffs address the underwriter

19  affirmative defenses below.

20      87.     While the following concerns an affirmative defense which can be raised by the

21  Underwriter Defendants only, and concerning which each of them bears the burden of proof,

22  nevertheless, Plaintiffs allege that each Underwriter Defendant did not make a reasonable

23  investigation, did not possess reasonable grounds to believe, and did not believe, that the

24  statements contained in the Offering Documents were true, were without omissions of any

25  material facts and were not misleading.  Each Underwriter Defendant participated in the

26  preparation of the Offering Documents, and was required to investigate with due diligence the

27  statements contained therein to confirm that they did not contain material misstatements or

28  omitted to state material facts, but each of the Underwriter Defendants did not perform this

CLASS ACTION COMPLAINT

- 12 -

1    investigation with due diligence. (Indeed, the underwriter Defendant had a substantial direct

2    interest in the success of the offering, as detailed above.)

3        88.    Each Underwriter Defendant, as the result of engaging in the routine conduct of

4    their business or through common sense, was negligent (without limitation) as follows:

5        (a) in not knowing that their misstatements and omissions were material;

6        (b) in not knowing that the statements concerning the Company's future revenue

7    and revenue growth rates were materially inaccurate.

8        89.    The Offering Documents, at the time they became effective, were inaccurate and

9    contained material misstatements of fact; omitted to state material facts required to be stated

10    therein, or failed to disclose certain material facts necessary to make the statements therein not

11    misleading, as set forth herein.

12        90.    The facts misstated and omitted would have been material to a reasonable person

13    reviewing the Offering Documents.

14        91.    Plaintiffs and the other Class members did not know and, in the exercise of

15    reasonable diligence, could not have known of the material misstatements and material omissions

16    contained in the Offering Documents at the time of their purchases during the Class Period.

17        92.    During the Class Period, Plaintiffs and the other members of the Class purchased in

18    the initial public offering over five hundred million shares of Facebook common stock.

19        93.    Although not required to be alleged with respect to this claim because it is an

20    affirmative defense to be alleged and proven by Defendants, nevertheless, Plaintiffs allege that

21    Plaintiffs and the other members of the Class purchased their Facebook shares as a direct and

22    proximate result of, and/or without knowledge of, the material misstatements and omissions in the

23    Offering Documents. Plaintiffs and/or other members of the class would not have purchased their

24    Facebook shares from Defendants if the material misstatements and material omissions in the

25    Offering Documents had not been made by Defendants.

26        94.    By virtue of the foregoing, each of the Defendants on this section 11 claim violated

27    section 11 of the Securities Act, and is liable to Plaintiffs and the other members of the Class.

28        95.    As a direct and proximate result of Defendants' unlawful conduct as alleged herein,

CLASS ACTION COMPLAINT

1   Plaintiffs and the other members of the Class sustained damages in connection with their purchase

2   of Facebook shares during the Class Period pursuant to or traceable to the Offering Documents in

3   an amount in excess of $500 million and possibly in excess of $1 billion, the exact amount to be

4   proven at trial.

5       96.     Plaintiffs and the members of the Class acquired their shares pursuant or traceable

6   to the Company's Offering Documents which were rendered materially inaccurate as a result of

7   Defendants' misstatements and omissions.

8                            **SECOND CLAIM FOR RELIEF**
    **(Against The Individual Defendants For Control Person Liability**
9                **Under Section 15 For Violation Of Section 11)**

10      97.     Plaintiffs repeat and reallege each and every allegation above as if fully set forth

11  herein.

12      98.     Plaintiffs do not allege that the material omissions and material misstatements set

13  forth herein were made intentionally, knowingly or recklessly by Defendants.

14      99.     The Defendants in this claim for control person liability under section 15 of the

15  Securities Act, for violation of section 11 of the Securities Act, are all of the Individual

16  Defendants.

17      100.    The Individual Defendants, individually and jointly, were control persons under

18  section 15 by virtue of their senior executive officer and/or directorial positions at the Company.

19      101.    As senior officers and/or directors of the Company, the Individual Defendants had

20  a duty to have the controlled persons issue materially accurate information in the Offering

21  Documents.

22      102.    The Individual Defendants at all relevant times were able to and did control the

23  Company's day-to-day operations, financial statements, and public filings.

24      103.    The Individual Defendants at all relevant times were able to and did control the

25  contents of the Offering Documents, which contained material misstatements and material

26  omissions; the issuance of the Offering Documents; had and exercised the power and influence to

27  cause the Company to engage in the unlawful conduct complained of herein, and had the power to

28  cause some or all of the other Defendants to refrain from the conduct complained of herein.

CLASS ACTION COMPLAINT

- 14 -

104.    The Individual Defendants were a control person of at least one primary violator of section 11, the Company. By virtue of their positions as controlling persons of a primary violator, each of the Individual Defendants is also liable pursuant to section 15 of the Securities Act.

105.    While the following concerns an affirmative defense that can be raised by only these control person Defendants, and concerning which they bear the burden of proof, nevertheless, Plaintiffs allege that each of these Defendants, as a controlling person, cannot prove that he: (a) had no knowledge of the existence of the facts by reason of which the liability of the controlled person is alleged to exist; or (b) had no reasonable grounds to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

106.    As set forth above, each of the Defendants on the section 11 claim violated section 11 of the Securities Act.

107.    The Individual Defendants, individually and jointly, are each liable under section 15 as a control person of the other Defendants who are primarily liable under section 11, and each Defendant on this claim is liable to Plaintiffs and the other members of the Class, in an amount to be proved at trial.

## THIRD CLAIM FOR RELIEF
### (Against All Defendants For Violations Of Section 12(a)(2) Of The Securities Act)

108.    Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

109.    Plaintiffs do not allege that the material omissions and material misstatements set forth herein were made intentionally, knowingly or recklessly by Defendants.

110.    Plaintiffs brought this action within one year after the discovery of the materially incorrect statements and omissions, and within three years after the shares were offered to the public through the Offering Documents.

111.    This claim is brought by Plaintiffs against all Defendants.

112.    The Company, as the issuer of the shares, reaped over $6.8 billion from the IPO.

113.    The Individual Defendants were sellers and offerors and/or solicitors of purchasers of the Facebook shares offered pursuant to the Offering Documents.

114.    Mr. Zuckerberg was not only Chairman and CEO of the Company, but was the

CLASS ACTION COMPLAINT

1 public face of the Company. Mr. Zuckerberg became a billionaire many times over as a result of
2 the IPO.

3     115. The Underwriter Defendants made over \$150 million in underwriting fees from
4 sales of Facebook shares in the IPO, fees that they would not have made if the Offering
5 Documents had not contained material misstatements and material omissions.

6     116. Each of the Defendants on this claim was a seller, offerer and/or solicitor of
7 purchases of the Company's shares, pursuant to the Offering Documents, for their own financial
8 benefit.

9     117. Each of the Defendants' acts of selling, offering and/or soliciting included but were
10 not limited to the preparation of the Offering Documents which contained the material
11 misstatements and material omissions, and their issuance and dissemination to public investors.

12     118. Each of the Defendants' acts of selling, offering and/or soliciting was a substantial
13 factor with respect to the purchase of the Company's shares by Plaintiffs and the members of the
14 Class.

15     119. But for the Defendants' selling and/or solicitation activities by means of the
16 materially incorrect Offering Documents, Plaintiffs and the members of the Class would not have
17 purchased their Facebook shares or would have acquired their shares at a price less than they
18 actually paid.

19     120. While the following concerns an affirmative defense which can be raised by only
20 the section 12 Defendants, and concerning which they bear the burden of proof, nevertheless,
21 Plaintiffs allege that each of these Defendants cannot prove that it: (a) did not know of such
22 material misstatement or omission and (b) in the exercise of reasonable care could not have known
23 of such material misstatement or omission.

24     121. Plaintiffs and the other members of the Class purchased their shares in the initial
25 public offering which makes all shares purchased in and of themselves traceable to the offering.

26     122. Plaintiffs and the other members of the Class purchased their Facebook shares
27 pursuant to the written Offering Documents herein, and without knowledge of the material
28 misstatements and omissions in those Offering Documents.

CLASS ACTION COMPLAINT

- 16 -

1    123.    The Facebook shares sold to Plaintiffs and the other members of the Class during
2  the Class Period lost at least hundreds of millions of dollars, and possible billions of dollars, in
3  value.

4    124.    As a direct and proximate result of Defendants' unlawful conduct as alleged herein,
5  Plaintiffs and the other members of the Class suffered damages in connection with their purchases
6  of Facebook shares during the Class Period.

7    125.    By virtue of the foregoing, each of the Defendants on this section 12 claim is
8  primarily liable under section 12(a)(2) of the Securities Act, and each is primarily liable to
9  Plaintiffs and other members of the class.

10    126.    Plaintiffs, individually and representatively, hereby elect to rescind and tender
11  those securities that Plaintiffs and the other members of the Class continue to own, in return for
12  the consideration paid for those securities together with interest thereon. Plaintiffs and members
13  of the Class who have sold their Facebook shares are entitled to rescissory damages, in an amount
14  to be proved at trial.

15  <center>**FOURTH CLAIM FOR RELIEF**
**(Against The Individual Defendants For Control Person Liability**
**Under Section 15 For Violation Of Section 12)**</center>
16

17    127.    Plaintiffs repeat and reallege each and every allegation above as if fully set forth
18  herein.

19    128.    Plaintiffs do not allege that the material omissions and material misstatements set
20  forth herein were made intentionally, knowingly or recklessly by Defendants.

21    129.    The Defendants in this claim for control person liability under section 15 of the
22  Securities Act, for violation of section 12 of the Securities Act, are all of the Individual
23  Defendants.

24    130.    For the reasons stated in the Second Claim above, each of the Individual
25  Defendants is a control person pursuant to section 15 of the Securities Act.

26    131.    While the following concerns an affirmative defense that can be raised by only
27  these control person Defendants, and concerning which they bear the burden of proof,
28  nevertheless, Plaintiffs allege that each of these Defendants, as a controlling person, cannot prove

CLASS ACTION COMPLAINT

- 17 -

1    that he: (a) had no knowledge of the existence of the facts by reason of which the liability of the

2    controlled person is alleged to exist; or (b) had no reasonable grounds to believe in the existence

3    of the facts by reason of which the liability of the controlled person is alleged to exist.

4         132.   As set forth above, each of the Defendants on the section 12 claim violated section

5    12 of the Securities Act.

6         133.   The Individual Defendants, individually and jointly, are each liable under section

7    15 as a control person of the other Defendants who are primarily liable under section 12, and each

8    Defendant on this claim is liable to Plaintiffs and the other members of the Class, in an amount to

9    be proved at trial.

10                                **REQUEST FOR RELIEF**

11        134.   WHEREFORE, Plaintiffs demand judgment individually and on behalf of the Class

12   against Defendants, jointly and severally, as follows:

13        a.     An order declaring this action to be a class action properly maintained pursuant to

14   the Federal Rules of Civil Procedure, including Rules 23(a) and (b)(3), certifying the Class, and

15   certifying their counsel as Class Counsel;

16        b.     Against Defendants, jointly and severally, for damages suffered as a result of

17   Defendants' violations of the Securities Act, and/or awarding rescission under section 12 of the

18   Securities Act, in an amount to be proven at trial;

19        c.     Awarding Plaintiffs and the other members of the Class pre-judgment and post-

20   judgment interest, as well as their reasonable attorneys' fees, accountants' fees and experts' fees

21   and other costs and disbursements; and

22        d.     Awarding Plaintiffs and the Class such other and further relief as may be just and

23   proper under the circumstances.

24   ///

25   ///

26   ///

27   ///

28   ///

CLASS ACTION COMPLAINT

- 18 -

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all issues so triable.

DATED: May 23, 2012

WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
FRANCIS M. GREGOREK
BETSY C. MANIFOLD
RACHELE R. RICKERT
PATRICK H. MORAN


PATRICK H. MORAN

750 B Street, Suite 2770
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile:  619/234-4599

WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
GREGORY M. NESPOLE
ROBERT B. WEINTRAUB
270 Madison Avenue
New York, New York 10016
Telephone:  212/545-4600
Facsimile:  212/545-4653

WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLC
ADAM J. LEVITT
55 West Monroe Street, Suite 1111
Chicago, Illinois 60603
Telephone:  312/984-0000
Facsimile:  312/984-0001

LAW OFFICES OF MARC S. HENZEL
MARC S. HENZEL
431 Montgomery Ave. Suite B
Merion Station, PA 19066

Attorneys for Plaintiffs

FACEBOOK:18908.CPT

CLASS ACTION COMPLAINT

- 19 -

EXHIBIT A

## PLAINTIFF'S CERTIFICATION

Michael Spatz ("Plaintiff") declares under penalty of perjury, as to the claims asserted under the federal securities laws, that:

1.      Plaintiff has reviewed the complaint and authorized the commencement of an action on Plaintiff's behalf.

2.      Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff's transactions in Facebook securities during the Class Period specified in the Complaint are as follows:

| Date | # of Shares Purchased | # of Shares Sold | Price |
|------|-----------------------|------------------|-------|
| 5/18 | 200 | | 40 $\frac{11}{}$ |
| 5/18 | 100 | | 38 $\frac{12}{}$ |
| 5/21 | 100 | | 35 $\frac{12}{}$ |
| 5/21 | 100 | | 34 $\frac{34}{}$ |
| 5/21 | 100 | | 33 $\frac{12}{}$ |

5.      During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws.

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond his *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 22 day of May, 2012.

_____
Michael Spatz

# EXHIBIT B

## PLAINTIFF'S CERTIFICATION

SANJAY ISRANI ("Plaintiff") declares under penalty of perjury, as to the claims asserted under the federal securities laws, that:

1.      Plaintiff has reviewed the complaint and authorized the commencement of an action on Plaintiff's behalf.

2.      Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff's transactions in Facebook securities pursuant or traceable to the IPO specified in the Complaint are as follows:

| Date | # of Shares Purchased | # of Shares Sold | Price |
|------|----------------------|------------------|-------|
| 05/18/2012 | 50 | | 38.00 |
| 05/18/2012 | 50 | | 43.00 |
| 05/22/2012 | | 50 | 30.80 |

5.      During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws. [Or, Plaintiff has served as a class representative in the action(s) listed below:]

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 23rd day of MAY , 2012.

SANJAY ISRANI